CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**Ron Sarfaty and Gary Scherer,**

Plaintiffs,

v.

**City of Los Angeles;** and Does 1-10,

Defendants.

Case No.

**Complaint For Damages And Injunctive Relief For Violations Of:**

1. Title II of the American's with Disabilities Act, 42 U.S.C. §12131 *et seq*.;
2. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;
3. California Government Code §11135 *et seq*.; and
4. California's Disabled Persons Act, Cal. Civ. Code § 54 *et seq*.

Plaintiffs Ron Sarfaty and Gary Scherer (collectively "Plaintiffs") complain of Defendant City of Los Angeles and Does 1-10 ("Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiffs Ron Sarfaty and Gary Scherer bring this action alleging that the City of Los Angeles ("City") has discriminated against them on the basis of disability, in violation of federal and state anti-discrimination statutes.

2. Plaintiffs challenge the City's failure to assess, evaluate, consider, address or ensure accessibility when altering its streets and on-street parking facilities and constructing "cycletracks."

3. Plaintiffs allege that by acting as herein alleged, Defendants have created a dangerous situation for wheelchair users, and are failing to operate its facilities in a manner such that they are readily accessible to and usable by individuals with disabilities.

4. Additionally, Plaintiffs allege that the City was made aware of the access issues resulting from the installation of cycletracks on its streets, and have ignored those concerns.

5. As a result of Defendants' failure to ensure the accessibility of its on-street parking facilities, Plaintiffs have suffered, and will continue to suffer, damages, and have been, and will continue to be, denied full and equal access to the City's on-street parking programs, services and activities.

6. Through this lawsuit, Plaintiffs seek to compel the City to comply with its legal obligation under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and related state civil rights law to design, construct, alter and operate its on-street parking program, services and activities so that they are "readily accessible to and usable by individuals with disabilities." Plaintiffs also seek damages and reasonable attorneys' fees, and the costs and litigation expenses incurred as the result of enforcing their civil rights.

## PARTIES

7. Plaintiff Ron Sarfaty ("Sarfaty") is, and at all times relevant herein was, a California resident with physical disabilities. Sarfaty is unable to walk or stand independently as the result of a stroke, and uses a wheelchair for mobility. Sarfaty is, and at all times relevant herein was, a "qualified person with a disability" and a "physically disabled person" as those terms are defined under the ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 35.104), Section 504 (29 U.S.C. § 794) and California law (Cal. Gov. Code § 12926).

8. Plaintiff Gary Scherer ("Scherer") is, and at all times relevant herein was, a California resident with physical disabilities. Scherer is unable to walk or stand independently as the result of ataxia, and uses a wheelchair for mobility. Scherer is, and at all times relevant herein was, a "qualified person with a disability" and a "physically disabled person" as those terms are defined under the ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 35.104), Section 504 (29 U.S.C. § 794) and California law (Cal. Gov. Code § 12926).

9. Defendant City of Los Angeles is, and at all times relevant to herein was, a political subdivision of the State of California.

10. Plaintiffs are currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend when their true names, capacities, connections, and responsibilities are ascertained.

11. Plaintiffs are informed and believe that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was

at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA and Section 504.

13. Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Disabled Persons Act, which act expressly incorporates the Americans with Disabilities Act. Cal. Civ. Code §§ 54(c) and 54.1(d).

14. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

## FACTUAL ALLEGATIONS

15. Sarfaty uses a modified van equipped with a lift for transportation due to his disability.

16. Scherer uses a modified van equipped with a lift for transportation due to his disability.

17. In 2015 the City of Los Angeles altered its on-street parking facilities and constructed parking-protected bike lanes (also known, and referred to herein as "cycletracks") on both sides of the street on Reseda Boulevard in Northridge, from Plummer Street to Parthenia Street.

18. According to the National Association of City Transportation Officials, cycletracks are an "exclusive bike facility that combines the user experience of a separated path with the on-street infrastructure of a conventional bike lane ... physically separated from motor traffic and distinct from the sidewalk ... they provide space that is intended to be exclusively or primarily used for bicycles, and are separated from motor vehicle travel lanes, parking lanes, and sidewalks."

19. Also according to the National Association of City Transportation Officials, in situations where on-street parking is allowed cycle tracks are located to the curb-side of the parking (in contrast to bike lanes).

20. The alteration of the on-street parking and construction of the cycletracks on Reseda occurred as part of the City's "Great Streets Project", concurrent with street resurfacing and other upgrades.

21. The Great Streets Project was boasted to include "new and exciting design concepts that provide for a street that is safer and more predictable for a people who drive, walk, bicycle, and take transit to and from local businesses and destinations."

22. Unfortunately, the City failed and refused to consider, assess, evaluate or address the needs and rights of people with disabilities in developing the Great Streets Project, altering its on-street parking and/or developing and implementing the cycletracks concept.

23. The alteration of the street and on-street parking facilities on Reseda Boulevard from Plummer Street to Parthenia Street to include

cycletracks has created a situation that is both dangerous and inaccessible to Plaintiffs and other individuals who use wheelchairs.

24. On information and belief, the City has plans to alter its on-street parking to install cycletracks at other locations throughout the City of Los Angeles, which will render even more on-street parking dangerous and inaccessible to wheelchair users unless the needs of individuals are considered and addressed.

**Fact in Support of Sarfaty's Claims:**

25. Sarfaty lives in West Hills and has frequented the above-described stretch of Reseda Boulevard numerous times in the past to patronize the businesses there.

26. During the first week of April 2015, Sarfaty visited Njoy Games and Comics, located at 8820 Reseda Boulevard. Sarfaty parked in one of the newly constructed parking spaces on the 8800 block of Reseda Boulevard.

27. Sarfaty's ramp could not reach the curb as it used to before, as cycletracks were installed on the curb side of the parking spaces such that he was forced to deploy his ramp into the busy bicycle lane.

28. Sarfaty then had to ride in the bicycle lane to the nearest intersection in order to access the sidewalk.

29. Bicyclists, who are very common in the area given the student population at nearby Cal State Northridge, were rude to, and screamed at Sarfaty as he attempted to get from his vehicle to the sidewalk.

30. On April 6, 2016, Sarfaty filed a grievance with the City regarding his experience and the inaccessibility of the parking situation on Reseda Boulevard. Sarfaty asked that the on-street parking be restored to a safe and accessible configuration. Sarfaty received no response to this correspondence.

31. On August 25, 2015 Sarfaty again visited the above-described stretch of Reseda Boulevard and again personally encountered the inaccessible and unsafe on-street parking situation created by the cycletracks. That same day he again wrote the City to complain and request that the parking situation be remedied. The City did not respond to this correspondence.

32. On other occasions between April 2015 and December 2015 Sarfaty was prevented and deterred from using the on-street parking facilities on Reseda Boulevard due to the presence of cycletracks. Rather than park near the business he intended to visit, Sarfaty was forced to park in the 99 Cent Parking lot down the street. This caused Sarfaty frustration, difficulty, discomfort and inconvenience.

33. In January 2016, Sarfaty wrote the City a third time to complain about the unsafe and inaccessible conditions on Reseda Boulevard. Again, the City ignored Sarfaty's complaint.

34. On September 19, 2016 Sarfaty called the Department on Disability to again complain about the unsafe and inaccessible parking on Reseda Boulevard and ask that the conditions be remediated. Sarfaty was told by an individual believed to be the ADA Coordinator for the City that the City would not be making any changes to the parking on Reseda Boulevard.

35. Sarfaty has also personally experienced and encountered the following problems as the result of the City's alteration of its on-street parking facilities and installation of cycletracks, resulting in frustration, difficulty, discomfort and inconvenience:

a. Of all the parking spots altered and/or created when the cycletracks were installed, none were designated, configured or signed for use by people with disabilities;

b. The protected bike lanes and "buffer zones" (i.e. the a narrow lane with bollards located between the cycletracks and parking spaces) into which wheelchair users must now deploy their ramps to exit their vehicles present slopes that exceed 5%;

c. The bollards in the buffer zones are placed at regular intervals and create obstructions;

d. The buffer zones range in width from approximately 41 inches to 58 inches, which is not enough space to allow individuals in chairs to safely deploy their vehicle ramps and exit their vehicles (additionally, the buffer zones are not specifically intended for the purpose of loading and unloading wheelchair users);

e. There are no mid-block curb ramps or designated accessible paths of travel to get wheelchair users safely from the current parking spaces to the public sidewalk. Individual who use wheelchairs must ride in the bike lane (the buffer zone is unusable due to the bollards), in order to get to a drive way or intersection connecting to the public sidewalk.

36. Since December 2015 Sarfaty has been deterred from, and has substantially curtailed his visits to, the businesses on Reseda Boulevard due to his actual knowledge of the unsafe and inaccessible parking conditions that exist there. Sarfaty would like to resume his patronage of these businesses without the issues currently presented by the parking situation.

**<u>Fact in Support of Scherer's Claims:</u>**

37. Scherer lives in Winnetka and attends a weekly support group for individuals with disabilities at Northridge Hospital every Thursday. Before and/or after group Scherer runs errands and frequents businesses along the above-described stretch of Reseda including Yogurtland (9225 Reseda Blvd.), the UPS store (9227 Reseda Blvd.) and Jonny's Shoe Repair (8831 Reseda Blvd.).

38. Scherer has experienced significant difficulty utilizing the City's public on-street parking since the parking was altered and cycle tracks installed. On dates including May 12, 2016 and May 26, 2016, and in April 2016, Scherer parked on the west side of Reseda where the businesses he sought to visit are located. When Scherer deployed his ramp to exit or enter his vehicle, it protruded into the parking protected bike lane, creating a risk of injury for him and passing bicyclists and causing him significant difficulty, discomfort and distress.

39. On May 12, 2016, Scherer was almost hit by a bicyclist that tried to pass between the curb and his ramp as he was exiting his van. Scherer almost flipped his chair trying to avoid hitting the bicyclist and was significantly shaken up.

40. Scherer has also personally experienced and encountered the following problems as the result of the City's alteration of its on-street parking facilities and installation of cycletracks, resulting in frustration, difficulty, discomfort and inconvenience:

a. Of all the parking spots altered and/or created when the cycletracks were installed, none were designated, configured or signed for use by people with disabilities;

b. The protected bike lanes and "buffer zones" (i.e. the a narrow lane with bollards located between the cycletracks and parking spaces) into which wheelchair users must now deploy their ramps to exit their vehicles present slopes that exceed 5%;

c. The bollards in the buffer zones are placed at regular intervals and create obstructions;

d. The buffer zones range in width from approximately 41 inches to 58 inches, which is not enough space to allow individuals in chairs to safely deploy their vehicle ramps and exit their vehicles (additionally, the buffer zones are not specifically intended for the purpose of loading and unloading wheelchair users);

e. There are no mid-block curb ramps or designated accessible paths of travel to get wheelchair users safely from the current parking spaces to the public sidewalk. Individual who use wheelchairs must ride in the bike lane (the buffer zone is unusable due to the bollards), in order to get to a drive way or intersection connecting to the public sidewalk.

41. On June 13, 2016, Scherer filed an ADA complaint with the Department on Disability regarding the unsafe parking situation on Reseda and requested that the need for accessible parking be addressed. The City has not issued any substantive response to Scherer's complaint or request for accessible parking.

42. Since the above-described experiences, Scherer has been deterred from, and has substantially curtailed his visits to, the businesses on Reseda Boulevard, and or he remains in his parked van while his wife runs the

couple's errands without him. Scherer would like to be able to patronage the businesses on Reseda independently and with his wife, without the issues currently presented by the parking situation.

43. On information and belief, there are other access barriers and discriminatory policies that exclude and deter Plaintiffs and others similarly situated from enjoying full and equal access to the City's on-street parking programs, services and activities. The extent of these additional barriers will be made known after a full inspection of Defendants' facilities, and if necessary, reflected in an amendment of Plaintiffs' Complaint.

44. As a direct and proximate result of Defendants' discriminatory acts and omissions, as herein alleged, and the resulting inaccessibility of the City's on-street's parking facilities, Plaintiffs have experienced difficulty, discomfort, embarrassment, inconvenience, sadness and frustration.

45. Intent to Return: Plaintiffs plan to visit Reseda Boulevard in the future, but are prevented and deterred from doing so until Defendants take action to ensure the accessibility of its on-street parking facilities.

46. Injunctive Relief: The nature of Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law because monetary damages, which may compensate for past unlawful conduct, will not afford adequate relief for the harm caused by the continuation of the wrongful conduct of Defendants and the denial of Plaintiffs' rights as herein alleged. Accordingly, Plaintiffs are entitled to injunctive relief.

47. Declaratory Relief: An actual controversy has arisen and now exists between the parties concerning their respective rights, duties and obligations under federal and state law. Accordingly, Plaintiffs are entitled to declaratory relief.

## GOVERNMENT CLAIM FILED

***(With regard to Plaintiffs' claims for damages under State Law)***

48. Sarfaty timely mailed a claim with the City pursuant to § 910 et seq. of the California Government Code on or about September 30, 2016. Although the City acknowledged receipt of the claim via correspondence dated October 5, 2016, it failed to otherwise respond to the claim. The claim was therefore deemed denied as a matter of law on or about November 19, 2016.

49. Scherer timely mailed a claim with the City pursuant to § 910 et seq. of the California Government Code on or about September 28, 2016. Although the City acknowledged receipt of the claim via correspondence dated October 5, 2016, it failed to otherwise respond to the claim. The claims was therefore deemed denied as a matter of law on or about November 17, 2016.

## FIRST CAUSE OF ACTION

## Title II of the Americans with Disabilities Act of 1990

## 42 U.S.C. § 12131 *et seq*.

50. Plaintiffs re-plead and incorporate by reference the allegations contained in each of the foregoing paragraphs.

51. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

52. At all times relevant herein, the City is and was a "public entity" within the meaning of Title II of the ADA.

53. At all times relevant herein, the provision of public on-street

parking is and was a service, program, or activity of the City. See *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th. Cir. 2014).

54. As individuals with physical disabilities that substantially limit their ability to walk, Plaintiffs are, and at all times relevant herein were, qualified individuals with disabilities within the meaning of Title II of the ADA.

55. As members of the public, Plaintiffs met and continue to meet the essential eligibility requirements for the receipt of the services, programs, or activities offered by Defendants to the public by and through their on-street parking program.

56. Defendants' acts and omissions as herein alleged have excluded and/or denied Plaintiffs the benefit and use of the City's on-street parking facilities, violating Title II and its implementing regulations. The Defendants' discriminatory conduct includes, *inter alia*:

a. Failing to operate the City's on-street parking facilities so that they are "readily accessible to and usable by individuals with disabilities" (28 C.F.R. § 35.150(a));

b. Altering the City's on-street parking facilities to make them less accessible then they were previously, violating the City's obligation to maintain its accessible features (28 C.F.R. § 35.133);

c. Failing to design, construct and/or alter the City's on-street parking facilities in such a manner that they are readily accessible to and usable by individuals with disabilities, when the construction was commenced after January 26, 1992 (28 C.F.R. § 35.151);

d. Denying Plaintiffs the opportunity to participate in or benefit from the aids, benefits, or services offered by

Defendants to members of the public, on the basis of their disabilities (28 C.F.R. § 35.130(b)(1)(i));

e. Affording Plaintiffs an opportunity to participate in or benefit from the aids, benefits, or services offered by Defendants to members of the public that is not equal to that afforded their non-disabled peers (28 C.F.R. § 35.130(b)(1)(ii));

f. Providing Plaintiffs with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others (28 C.F.R. § 35.130(b)(1)(iii));

g. Otherwise limiting Plaintiffs in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aids, benefits, or services offered by Defendants to members of the public (28 C.F.R. § 35.130(b)(1)(vii));

h. Utilizing methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of her disability (28 C.F.R. § 35.130(b)(3)(i)); and

i. Failing to make reasonable modifications in policies, practices, or procedures where necessary to avoid discrimination against Plaintiffs on the basis of their disability (28 C.F.R. § 35.130(b)(7)).

57. Defendants' duties under Title II are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged and described herein demonstrates knowledge, willfulness, intent and/or

deliberate indifference.

58. Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiffs pray for judgment as set forth below.

**SECOND CAUSE OF ACTION**

**Section 504 of the Rehabilitation Act of 1973**

**29 U.S.C. § 794**

59. Plaintiffs re-plead and incorporate by reference the allegations contained in each of the foregoing paragraphs.

60. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a).

61. Defendants are recipients of "federal financial assistance" in the form of federal grants and loans.

62. Defendants' acts and omissions as herein alleged have excluded and/or denied Plaintiffs the benefit of and/or participation in the programs and activities offered by Defendants to members of the public, in violation of Section 504 and its implementing regulations.

63. Defendants' duties under Section 504 are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged and described herein demonstrates knowledge, willfulness, intent and/or deliberate indifference.

64. Pursuant to 29 U.S.C. § 794a, Plaintiffs pray for judgment as set forth below.

## THIRD CAUSE OF ACTION

## California Government Code § 11135

65. Plaintiffs re-plead and incorporate by reference the allegations contained in each of the foregoing paragraphs.

66. Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of ... disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

67. Defendants are recipients of financial assistance from the State of California for street construction, alteration and maintenance as well as for the operation of its programs and/or activities generally.

68. In acting as herein alleged, Defendants have subjected individual with disabilities to discrimination, and have denied such individuals the full and equal benefits of its on-street parking in violation of Government Code § 11135.

69. California Government Code § 11135(b) also incorporates the protections and prohibitions contained in the ADA and its implementing regulations.

70. For all of the reasons outlined above, Defendants have violated and continue to violate the ADA and therefore have violated and continue to violate California Government Code § 11135(b).

71. Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

72. Pursuant to Cal. Gov't Code § 11139, Plaintiffs pray for judgment as set forth below.

**FOURTH CAUSE OF ACTION**

**California Disabled Persons Act**

**California Civil Code § 54 *et seq*.**

***(Statutory damages and attorneys' fees only)***

73. Plaintiffs re-plead and incorporate by reference the allegations contained in each of the foregoing paragraphs.

74. The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, ... public facilities, and other public places." Cal. Civ. Code § 54(a).

75. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, §§ 54(c).

76. Defendants' acts and omissions, described herein, have denied, and continue to deny Plaintiffs full and free use of the City's on-street parking facilities, violating the CDPA.

77. Defendants' acts and omissions, described herein, have also violated the CDPA by violating the ADA. *See*, First Cause of Action.

78. Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged and described herein demonstrates knowledge, willfulness, intent and/or deliberate indifference. Trebled damages are warranted.

79. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiffs pray for statutory damages and attorneys' fees under Cal. Civ. Code § 54.3(a).

**PRAYER**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue an injunction pursuant to the ADA, Section 504 and Govt. Code 11139:

   a. Ordering Defendants to bring the City's on-street parking facilities into compliance with applicable federal and state accessibility standards and make them fully and equally available to and usable by individuals with disabilities who use wheelchairs;

   b. Ordering Defendants to modify its policies to ensure compliance with the new construction/alteration and program access requirements of state and federal law; and

   c. Ordering Defendants to modify its reasonable accommodation and complaint policies to ensure timely response and consideration of disability-related requests and grievances.

   ***Note***: *Plaintiffs are not invoking section 55 of the California Civil Code and are not seeking injunctive relief under the CDPA.*

2. Award Plaintiffs general, compensatory, and statutory damages in an amount within the jurisdiction of this court;

3. Award Plaintiffs attorneys' fees, litigation expenses and costs of suit, as provided by law; and

4. Award such other and further relief as the Court may deem just and proper.

Dated: May 12, 2017

CENTER FOR DISABILITY ACCESS

By:_______________________
Russell Handy
Attorneys for Plaintiff