CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Dennis Price, SBN 279082
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
Phone: (858) 375-7385
Fax: (888) 422-5191
Dennisp@potterhandy.com

Michelle Uzeta, Esq., SBN 164402
uzetalaw@gmail.com
michelleu@potterhandy.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016
Tel: (858) 375-7385

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Ron Sarfaty,<br><br>             Plaintiff,<br><br>      v.<br><br>City of Los Angeles,<br><br>             Defendant. | Case No.: 17-cv-03594-SVW-KS<br><br>Plaintiff's Notice of Motion and Motion for Award of Reasonable Attorneys' Fees and Costs<br><br>Hearing Date:  October 26, 2020<br>Time:  1:30<br>Courtroom:  10A, 10th Floor<br>Date Action Filed:  May 12, 2017<br>Judgment Date: September 11, 2020<br><br>Judge: Hon. Stephen V. Wilson |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 26, 2020, at 1:30 p.m. or as soon thereafter as counsel may be heard by the Court, located at 350 West First Street, Los Angeles, California, in the courtroom of the Honorable Stephen V. Wilson, Plaintiff Ron Sarfaty will and hereby does move the Court pursuant to Federal Rule of Civil Procedure 54(d) and Civil Local Rules 54-7 and 54-8 for an order of attorneys' fees in the amount of $119,380 and costs in the amount of $27,173.99 for a total of $146,553.99.

This motion is made on the grounds that Plaintiff's action has resulted in a Final Judgment in Plaintiff's favor (Dkt. 136) that enforces an important right affecting the public interest; that a significant benefit has been conferred on the general public; and that the necessity and financial burden of private enforcement are such as to make the requested award appropriate.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in Support of the Motion, the Declarations and Exhibits filed herewith, the pleadings and papers on file herein, and upon such other and further evidence and argument as may be presented to the Court should the Court set a hearing on this Motion.

Pursuant to Local Rule 7-3, Plaintiff's Counsel attempted to meet and confer with defense counsel regarding the issue of fees and costs prior to the filing of this Motion. Uzeta Decl. at 3. A written demand was shared on September 18, 2020 and a follow up communication made on September 21, 2020. Id.  Defense counsel did not respond to these communications. Id.

Date:  September 24, 2020          Respectfully Submitted,


                                  By:    /s/ Michelle Uzeta
                                  _____
                                         Michelle Uzeta
                                         Attorneys for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .............................**Error! Bookmark not defined.**

TABLE OF AUTHORITIES ......................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................1

I.    INTRODUCTION ..............................................................1

II.   ARGUMENT...................................................................2

  A. Plaintiff is a Prevailing Party Entitled to Fees and Costs...................2

      1.  Federal Claims .............................................................2

      2.  State Claim ...................................................................3

  B. Plaintiff's Lodestar is Reasonable ..........................................6

      1.  Plaintiff's Hours are Reasonable ........................................ 8

      2.  Plaintiff's Billing Records are Sufficiently Detailed.............8

      3.  Plaintiff's Counsel have Exercised Vigerous Billing Judgment ...................................................................... 9

      4.  Plaintiff's Hourly Rates are Reasonable and Comparable to, or Below, Rates for Attorneys of Similar Skill and Experience in Los Angeles ..................................................10

        a)  Attorney Michelle Uzeta...............................................11

        b)  Attorneys Raymond G. Ballister, Dennis J. Price, Isabel Masanque and Elliott Montgomery...................16

  C. Plaintiff is Entitled to a Multiplier ...................................17

  D. Plaintiff is Entitled to Litigation Expenses and Costs. .....................21

  E. Plaintiff is Entitled to Fees for Work Litigating his Reasonable Fees and Costs ..................................................................21

III.  CONCLUSION..................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Ballen v. City of Redmond,</u>
   466 F.3d 736 (9th Cir. 2006) ............................................................. 18

<u>Barjon v. Dalton,</u>
   132 F.3d 496 (9th Cir. 1997) ............................................................. 10

<u>Barrios v. Cal. Interscholastic Fed'n,</u>
   277 F.3d 1128 (9th Cir. 2002) ............................................................ 2

<u>Beasley v. Wells Fargo Bank,</u>
   235 Cal.App.3d 1407 (1st Dist. 1991) ................................................ 4

<u>Bernardi v. Yeutter,</u>
   951 F.2d 971 (9th Cir. 1991) ............................................................. 21

<u>Blum v. Stenson,</u>
   465 U.S. 886 (1984).......................................................... 10, 11, 16

<u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human</u>
   <u>Res.,</u>
   532 U.S. 598 (2001).......................................................................... 3

<u>Clark v. City of Los Angeles,</u>
   803 F.2d 987 (9th Cir. 1986) ............................................................. 21

<u>Crommie v. State of California, Public Utilities Commission,</u>
   840 F.Supp. 719 (N.D. Cal. 1994) ..................................................... 18

<u>Folsom v. Butte County Ass'n of Govt's,</u>
   32 Cal.3d 668 (1982) ........................................................................ 10

<u>Fox v. Vice,</u>
   563 U.S. 826 (2011).......................................................................... 9

<u>Gonzalez v. City of Maywood,</u>
   729 F.3d 1196 (9th Cir. 2013). .......................................................... 7

ii

Graham v. Daimler Chrysler,
  34 Cal.4th 553 (2004) ................................................................ 4
Hamed v. Macy's West Stores, Inc.,
  2011 WL 5183856 (N.D. Cal. 2011) .................................. 21
Hensley v. Eckerhart,
  461 U.S. 424 (1983)......................................... 2, 3, 6, 8, 9
Hill v. Affirmed Hous. Group,
  226 Cal.App.4th 1192 (2014), reh'g denied (June 26, 2014), review denied
  (Aug. 27, 2014) .................................................................. 10
Horsford v. Board of Trustees of California State University, 132
  Cal.App.4th 359 (2005) ........................................................ 8, 19
Intel Corp. v. Terabyte Int'l, Inc.,
  6 F.3d 614 (9th Cir.1993) ...................................................... 6
Kerr v. Screen Extras Guild, Inc.,
  526 F.2d 67 (9th Cir.1975) .................................................... 17
Ketchum v. Moses,
  24 Cal.4th 1122 (2001) ........................................... 19, 21, 22
Lovell v. Chandler,
  303 F.3d 1039 (9th Cir. 2002) ............................................... 2
Los Angeles Police Protective League v. City of Los Angeles,
  188 Cal.App.3d 1 (1986) ........................................................ 4
Lyons v. Chinese Hospital Assn.,
  136 Cal.App.4th 1331 (2006) ................................................. 6
Lytle v. Carl,
  382 F.3d 978 (9th Cir.2004) ................................................... 8
Mangold v. California Public Utilities Commission,
  67 F.3d 1470 (9th Cir.1995) .................................................. 18

Maria P. v. Riles,
  43 Cal.3d 1281(1987) ................................................................ 4

Moreno v. City of Sacramento,
  534 F.3d 1106 (9th Cir. 2008) .................................................. 7

Morales v. City of San Rafael,
  96 F.3d 359 (9th Cir. 1996) ...................................................... 5

P.N. v. Seattle Sch. Dist. No. 1,
  474 F.3d 1165 (9th Cir. 2007) .................................................. 3

Padgett v. Loventhal,
  706 F.3d 1205 (9th Cir. 2013) ................................................ 10

Perkins v. Mobile Housing Bd.,
  847 F.2d 735 (11th Cir. 1988) .................................................. 8

Prison Legal News v. Schwarzenegger,
  608 F.3d 446 (9th Cir. 2010) ........................................... 10, 11

Reynolds Metals Co. v. Alperson,
  25 Cal.3d 124 (1979) ............................................................... 10

Serrano v. Priest,
  20 Cal.3d 25 (1977) .................................................................. 18

Stephens v. Coldwell Banker Commercial,
  199 Cal.App.3d 1394 (1988) ..................................................... 3

Van Gerwen v. Guarantee Mut. Life Co.,
  214 F.3d 1041 (9th Cir. 2000) .................................................. 7

Van Skike v. Dir., Office of Workers' Comp. Programs,
  557 F.3d 1041 (9th Cir.2009) ................................................. 10

Vizcaino v. Microsoft Corp.,
  290 F.3d 1043 (9th Cir. 1997) ................................................ 19

Wing v. Asarco, Inc.,
  114 F.3d 986 (9th Cir. 1997) .................................................. 19

<u>Woodland Hills Residence Assn., Inc. v. City Council,</u>

   23 Cal.3d 917 (1979) ................................................................ 6

**Federal Statutes**

29 U.S.C. § 794 ....................................................................... 1

29 U.S.C. § 794(b) ................................................................. 2

29 U.S.C. § 794a .................................................................... 2

42 U.S.C. § 12131 .................................................................. 1

42 U.S.C. § 12133 .................................................................. 2

42 U.S.C. § 12205 .................................................................. 2

**Federal Regulations**

28 C.F.R. Pt. 35, App. A ....................................................... 21

28 C.F.R. §35.175 ................................................................ 21

**State Statutes**

Code of Civil Procedure § 1021.5 ...................................... 3, 4

Government Code § 11135 .................................................. 1, 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Ron Sarfaty ("Plaintiff" or "Mr. Sarfaty") brought this action against Defendant City of Los Angeles ("City" or "Defendant") due to the City's failure and refusal to ensure that its altered on-street parking facilities on Reseda Boulevard between Plummer and Parthenia Streets (hereinafter "Reseda") were accessible to and usable by people with disabilities.

After over three years of litigation, which the City vigorously contested, the Court held, after a trial on the merits, that the City was liable for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12131 *et* seq. ("ADA"), Section 504 of the Rehabilitation Act, 29. U.S.C. §794 *et seq.* ("Section 504"), and California Government Code §11135 ("Section 11135"). Final Judgment, Dkt. 136, September 11, 2020 (hereinafter "Final Judgment"), p. 4, ¶¶ 14-15. The Court further issued an injunction requiring the City to install four reserved accessible parking spaces and make the modifications proposed by Plaintiff's expert Paul Bishop at the locations specified in Bishop's expert report. Final Judgment, p. 5, lines 10-14 (incorporating by reference Dkt. 85 at 8-12).

These results mean that Plaintiff and other individuals with disabilities visiting Reseda will now have the ability to use the on-street parking on Reseda without having to travel in a parking protected bike lane for a significant period of time, risking collisions with bicyclists and other possible harms, in order to reach the sidewalk and their intended destinations.

Plaintiff now seeks compensation for the attorney hours and costs required to litigate this matter to these results.

## II.   ARGUMENT

### A. Plaintiff is a Prevailing Party Entitled to Fees and Costs.

Plaintiff prevailed on his federal law claims under the ADA and Section 504, and his state law claim under Section 11135.

### 1. Federal Claims

The ADA provides that in actions brought to enforce its provisions, the Court may award the prevailing party reasonable attorneys' fees and costs. 42 U.S.C. § 12205 ("In any actions or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and fees and costs."). *See also* Lovell v. Chandler, 303 F.3d 1039, 1058 (9th Cir. 2002) (litigation expenses include "expert costs, travel expenses, and the preparation of exhibits.").

Section 504 of the Rehabilitation Act has the same attorney's fees and costs provisions as the ADA. See 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title"); *see also* 29 U.S.C. § 794(b) ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."); *see also* Lovell, 303 F.3d at 1056. ("The same remedies are available for violations of Title II of the ADA and § 504 of the RA").

Courts have held that under this standard a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir.2002) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429

(1983)); <u>Stephens v. Coldwell Banker Commercial</u>, 199 Cal.App.3d 1394, 1405 (1988). There are no such circumstances here.

Under federal law, "for a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." <u>P.N. v. Seattle Sch. Dist. No. 1</u>, 474 F.3d 1165, 1172 (9th Cir.2007) (internal quotation marks omitted). In other words, the alteration must have a "judicial imprimatur." <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res</u>., 532 U.S. 598, 605 (2001).

This case falls squarely within these parameters. The Court has found in Plaintiff's favor on the issue of liability with respect to both of Plaintiff's federal law claims. Final Judgment at p. 4, ¶¶ 14-15. The Court has also ordered the City of Los Angeles to install four reserved accessible parking spaces and make the modifications proposed by Plaintiff's expert Paul Bishop at the locations specified in his expert report. Final Judgment at p. 5, lines 10-14. These are significant alterations in the material relationship between the parties, and because they occurred due to order of this Court, they have the required judicial imprimatur.

## 2. State Claim

Plaintiff also prevailed on his state law claim under California Government Code Section 11135. Final Judgment at p. 4, ¶ 15. California law allows courts to award attorneys' fees to a successful party against an opposing party in any action which has resulted in the enforcement of an important right affecting the public interest. California Code of Civil Procedure Section 1021.5 ("Section 1021.5").

California courts have broadly interpreted Section 1021.5 to encourage private actions that benefit the public where the damages obtained would not

make a private action feasible for private attorneys. As the California Supreme Court has explained:

> [T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.

Graham v. Daimler Chrysler, 34 Cal.4th 553, 565 (2004) (quoting Maria P. v. Riles, 43 Cal.3d 1281, 1288-1289 (1987)). The elimination of discrimination against persons with disabilities is just such an important public policy.

The focus of Section 1021.5 is pragmatic and realistic – private litigants will not be able to pursue meritorious public interest cases if, as a practical matter, they cannot find competent and zealous lawyers willing to risk their fees to represent them. To determine the validity of a fee award under C.C.P. Section 1021.5, California courts evaluate whether the action:

> [H]as resulted in the enforcement of an important right affecting the public interest, (2) 'a significant benefit' has been 'conferred on the general public or a large class of persons,' (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate,' and (4) the fees 'should not in the interest of justice be paid out of the recovery.'

Beasley v. Wells Fargo Bank, 235 Cal.App.3d 1407, 1413 (1st Dist. 1991) (quoting Los Angeles Police Protective League v. City of Los Angeles, 188 Cal.App.3d 1, 6 (1986).

Here, Plaintiff has enforced an important right affecting the public interest. Namely, the right of people with disabilities to have equal access to a public entities' on-street parking. Enforcement of this right "is a step forward in fostering the free movement of people with disabilities within their communities and promoting their full integration into community life." Seaborn Decl. at ¶ 8. The liability finding in this case alone confers a significant benefit on the general public given that (as acknowledged in Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996)) findings of liability against defendants in civil rights matters can act as a powerful deterrent against future unlawful action. This is particularly true here, where the case addresses multiple issues of first or limited impression, including: (1) whether on-street public parking is a distinct "service, program or activity" for the purposes of Title II of the ADA; (2) whether the installation of parking protected bicycle lanes ("cycletracks") constitutes an "alteration" for purposes of Title II of the ADA; (3) whether public entities must ensure that their on-street parking is accessible to and usable by disabled persons, irrespective of whether the Department of Justice has adopted technical specifications for that particular type of facility; and (4) whether the Title III obligations of private businesses factor into the program accessibility requirements of Title II that are specifically mandated for public entities. Seaborn Decl. at ¶¶ 8-10; Fischer Decl. at ¶¶ 20, 23. The Court's holdings on these enumerated issues will not only benefit people with disabilities who need access to on-street parking facilities, they will benefit many other people in enforcing their right to full and equal access to public services, programs and activities in other contexts as well. Seaborn Decl. at ¶ 11; Fischer Decl. at ¶ 23. Stuart Seaborn, Managing Director of Litigation at Disability Rights Advocates, and Aaron J. Fischer, Litigation Counsel at Disability Rights California, describe the outcome of the case as "critical to the development of disability law regarding

accessibility requirements for street modifications", "groundbreaking" and "significant precedent." Fischer Decl. ¶¶ 20, 24; Seaborn Decl. at ¶ 7.

Plaintiff's success also conveys a significant long-term benefit to the public in the form of four designated accessible parking spaces on the altered portion of Reseda. This relief will benefit and ensure access for a wide range of people with disabilities visiting Reseda, not just Plaintiff.

Private enforcement of the above described rights through trial was necessary due to: (1) the City's view, despite clear Ninth Circuit to the contrary, that there can be no ADA violation absent technical standards; and (2) the City's position, even after this Court's findings to the contrary on the City's motion to dismiss and motion for summary judgment, that the *Willits* class action settlement barred Plaintiff's claims.

Under Section 1021.5, the term "successful party" is synonymous with the term "prevailing party." Woodland Hills Residence Assn., Inc. v. City Council, 23 Cal.3d 917, 570, 572 (1979). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefits of the parties sought in bringing suit." Lyons v. Chinese Hospital Assn., 136 Cal.App.4th 1331, 1346 (2006). In this case, Plaintiff's success on liability and injunctive relief were significant achievements for the benefits he sought in bringing suit.

**B. Plaintiff's Lodestar Is Reasonable**

"When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 622 (9th Cir.1993). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley v. Eckerhart, 461 U.S. at 433. Once calculated, under federal law, "[t]he lodestar amount is presumptively the reasonable fee

amount" and may only be adjusted upward or downward by applying a multiplier in "rare" or "exceptional" cases where "the lodestar amount is unreasonably low or unreasonably high." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).

"[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted." Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir.2013). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." Id.

The following summarizes the lodestar calculation for attorney's fees incurred in this matter:

| Name | Grad. Year | Total Hours | Hourly Rate | Lodestar Fee |
|------|-----------|-------------|-------------|--------------|
| Michelle Uzeta | 1992 | 153.4 | $600 | $92,040 |
| Raymond G. Ballister | 1983 | 36.7 | $550 | $20,185 |
| Dennis J. Price | 2011 | 10.2 | $450 | $4,590 |
| Elliott Montgomery | 2011 | 4.2 | $450 | $1,890 |
| Isabel Masanque | 2012 | 1.5 | $450 | $675 |
| **TOTAL:** | | **206** | | **$119,380** |

### 1. Plaintiff's Hours are Reasonable

Plaintiff's counsel put in the time and resources needed to fully protect Plaintiff's interests and achieve success on the liability findings and injunctive relief ruling in this case, in the face of a determined opposition by a well-resourced defendant. Counsel's "sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case." Perkins v. Mobile Housing Bd., 847 F.2d 735, 738 (11th Cir. 1988). Therefore, to deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." Id. In addition, "the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." Horsford v. Board of Trustees of California State University 132 Cal.App.4th 359, 396 (2005).

The thoroughly documented billing records submitted in this case demonstrate that staffing was appropriate to the complexity of the issues and tasks involved at each stage of the litigation. These records are filed herewith as Exhibit A.

### 2. Plaintiff's Billing Records are Sufficiently Detailed.

The fee records submitted in this matter are sufficiently detailed and provide all the information required to support an award of the fees requested. A prevailing party "is not required to record in great detail how each minute of his time was expended." Hensley, 461 U.S. at 437 n. 12; see also Lytle v. Carl, 382 F.3d 978, 989 (9th Cir.2004) ("minimal" descriptions sufficient to support an award of attorneys' fees so long as "they establish that the time was spent on the matters for which" the party seeks fees). The prevailing party seeking attorneys' fees need only "identify the general subject matter of his time expenditures" to meet its burden of establishing its fee request is reasonable. Hensley, 461 U.S. at 437 n. 12. This limited obligation reflects

the broader policy that a "request for attorney's fees should not result in a second major litigation." Id., at 437. *See also* Fox v. Vice, 563 U.S. 826 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.") Plaintiff's counsel's records exceed this standard in that they provide detailed descriptions of the work conducted and were contemporaneously maintained.  Uzeta Decl. at ¶ 20.

### 3. Plaintiff's Counsel have Exercised Vigorous Billing Judgment.

Plaintiffs' counsel exercised discretion in carefully reviewing their bills, writing off all paralegal time, time spent on clerical tasks and attorney time where it may have been excessive, inefficient, redundant or for any other reason unnecessary.  Uzeta Decl. at ¶ 21; Potter Decl. at ¶ 2. Only the time and resources needed to fully protect Plaintiff's interests and achieve success on Plaintiff's claims have been included in counsels' billing. Uzeta Decl. at ¶ 22. The time expended to prepare and effectively litigate Plaintiff's case, as reflected in the submitted billing records, was reasonable and necessary. Id.

Additionally, the time in the submitted billing records solely reflects time spent by Plaintiff's counsel on matters on which Plaintiff ultimately did prevail: liability and injunctive relief.  Id. at ¶ 23. Because Plaintiff did not prevail at trial on his damages claim, Plaintiff's counsel has eliminated any time expended on that issue from, the billing records submitted with this Motion in accord with Hensley v. Eckerhart, 461 U.S. at  440 ("where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.") (emphasis added). Uzeta Decl. at ¶ 23.

Finally, Plaintiff's counsel has eliminated any time solely related to the pursuit of the claims of former co-plaintiff Gary Scherer, who was forced to

1   drop out of the litigation due to medical reasons.  Id. at ¶ 24.   Mr. Scherer's

2   claims were dismissed by stipulation of the parties on December 20, 2019. Id.

3   Dkt No. 45.

4        No other reduction in Plaintiff's fees is warranted, as time spent on

5   work that is common to both fee-shifting and nonfee-shifting claims is fully

6   compensable, without reduction or apportionment. Reynolds Metals Co. v.

7   Alperson, 25 Cal.3d 124, 129 (1979); Hill v. Affirmed Hous. Group, 226

8   Cal.App.4th 1192, 1197 (2014), reh'g denied (June 26, 2014), review denied

9   (Aug. 27, 2014); Padgett v. Loventhal, 706 F.3d 1205, 1209 (9th Cir. 2013)

10   ("[T]he district court must award fees for the work that contributed to a

11   successful result as if the successful claims were the only ones litigated").

12   **4. Plaintiff's Hourly Rates are Reasonable and**

13   **Comparable to, or Below, Rates for Attorneys of**

14   **Similar Skill and Experience in Los Angeles.**

15        Both the United States Supreme Court and California Supreme Court

16   have held that fee awards to public interest attorneys who do not charge their

17   clients – such as in the instant matter – are "calculated according to the

18   prevailing market rates in the relevant community, regardless of whether

19   plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465

20   U.S. 886, 895 (1984) (quoted in Van Skike v. Dir., Office of Workers' Comp.

21   Programs, 557 F.3d 1041, 1046 (9th Cir.2009); Folsom v. Butte County Ass'n

22   of Govt's, 32 Cal.3d 668, 683–84 (1982) (same).

23        "Generally, the relevant community" for the purpose of determining the

24   prevailing market rate "is the forum in which the district court sits." Barjon v.

25   Dalton, 132 F.3d 496, 500 (9th Cir.1997). "[T]he proper scope of comparison

26   ... extends to all attorneys in the relevant community engaged in equally

27   complex Federal litigation, no matter the subject matter." Prison Legal News

28   v. Schwarzenegger, 608 F.3d 446, 455 (9th Cir.2010) (internal quotes

omitted). Courts determine the reasonableness of a rate based upon "the rates prevailing in that district for similar services by lawyers of reasonably comparable skill, experience and reputation," irrespective of practice area. Id., *quoting* Blum v. Stenson, 465 U.S. at 895 n. 11.

### *a) Attorney Michelle Uzeta*

Counsel requests a rate of $600/hour for counsel Michelle Uzeta, a civil rights / disability rights attorney with 28 years of relevant experience, including thirteen years of employment as an Associate Managing Attorney with Disability Rights California, the largest disability rights organization in the nation; two years as the Litigation Director of the Southern California Housing Rights Center; and two years as the Legal Director of the Disability Rights Legal Center. Uzeta Decl. at ¶ 6. Ms. Uzeta, a Stanford University alumnus and 1992 graduate of UC Davis School of Law, has extensive experience in litigation involving public entities and enjoys an excellent reputation in the legal community. Id. at ¶¶ 4, 8-11 (listing representative cases and *amici* work). Ms. Uzeta has been rated a Southern California Super Lawyer and Southern California Top Women Lawyer in the category of Civil Rights for the last six years. Id. at ¶ 9.  She was elected to the Board of Directors of the Disability Rights Bar Association ("DRBA") in 2016 and has served on the Board continuously since that time. Id.  She has also served on the Litigation Committee of the Civil Rights Education and Enforcement Center ("CREEC"), a nonprofit membership organization whose goal is to ensure that everyone can fully and independently participate in our nation's civic life without discrimination based on race, gender, disability, religion, national origin, age, sexual orientation, or gender identity. since its inception in 2013. Id.

Ms. Uzeta is employed by Potter Handy LLP for the specific purpose of developing and litigating fair housing and transportation cases and complex

cases involving public entity defendants. <u>Id</u>. at ¶ 7. She is recognized throughout the state and nationwide as possessing particular expertise and experience in these types of cases. <u>Id</u>. As set forth in her concurrently filed declaration, Ms. Uzeta played a principal role in the litigation of, and success achieved in, this case. <u>Id</u>. at ¶ 12. Ms. Uzeta was involved with the case from its inception and drafted every pleading and brief filed in the matter, even before making a formal appearance on docket. <u>Id</u>. She drafted the complaint and first amended complaint, prepared the oppositions to both the City's motions to dismiss, prepared all briefing required for the parties' cross motions for summary judgment, drafted the trial brief, trial declarations and all related trial documents, researched and briefed the issues of feasibility and standing as requested by the Court, and authored all necessary appellate briefing. <u>Id</u>. Ms. Uzeta also drafted all disclosures and discovery / discovery responses and handled all discovery disputes before Magistrate Stevenson. <u>Id</u>. She developed the case strategy and conducted all factual and legal research. <u>Id</u>.  She conducted all required document review. <u>Id</u>. Ms. Uzeta was the primary contact for Plaintiff, Plaintiff's witnesses, Plaintiff's investigators and experts, and opposing counsel. <u>Id</u>. She prepared other attorneys for court appearances and depositions when she was in another state to care for her dying father and rendered unavailable. <u>Id</u>. She prepared witnesses and trial counsel for trial and was responsible for completion of all post-trial tasks, including drafting proposed findings of fact and conclusions of law and a proposed judgment, and preparing this instant fee motion. <u>Id</u>.  Ms. Uzeta spent a total of 153.4 hours litigating this case.  Uzeta Decl. at ¶ 26; Exhibit A at pp. 1-36.

Ms. Uzeta's requested billing rate of $600/hour falls in the middle of the range of rates for which she has historically been approved in the Central District. Id. at ¶ 17. Over the last decade Ms. Uzeta's requested billing rate,

which has varied between $500 and $700 depending on case complexity, has consistently been deemed reasonable in the Central District. Id. (listing cases).

Ms. Uzeta's requested fee rate of $600 for this matter is a fair and reasonable rate, well within, if not below, the range of reasonable market rates used and routinely approved in the Central District for attorneys with similar skill, experience and reputation litigating civil rights / disability rights cases. Ms. Uzeta's requested rate is supported by the 2020 declarations of Aaron J. Fischer, Litigation Counsel at Disability Rights California and Richard Rothschild, fee expert and Director of Litigation at Western Center for Law and Poverty. Ms. Uzeta's requested rate is also supported by the declarations of fee experts Barrett S. Litt, Carol A. Sobel and Richard M. Pearl. These various declarations, filed herewith as Exhibits D through H, are summarized below for the Court's convenience.

Mr. Fischer is Litigation Counsel at the statewide non-profit Disability Rights California ("DRC"), and a long-time civil rights attorney. Fischer Decl. at ¶¶ 2-6. Through his work, Mr. Fischer has become familiar with the hourly billing rates generally awarded to prevailing parties in the context of complex disability rights litigation across the State of California, including in the Central District of California. Fischer Decl. at ¶ 14. Since 2016, Mr. Fischer's job responsibilities have included an annual review and update of hourly billing rates for DRC. Fischer Decl. at ¶ 15. As part of that process, Mr. Fischer gathers hourly rates information from other disability and civil rights legal advocacy organizations and from private firms specializing in disability and civil rights work. Id. Based on his regular review of hourly rates from private and nonprofit civil rights and disability rights lawyers, it is Mr. Fischer's assessment that Ms. Uzeta's rate of $600 per hour is reasonable, and in fact is *on the lower end* of the market's range for someone with her reputation, skill, and experience. Fischer Decl. at ¶ 17 (emphasis added). Mr.

Fischer also confirms that Ms. Uzeta's $600 billing rate is *less than* the current established billing rate for an attorney at DRC with similar years of experience. Id. at ¶¶ 17 (emphasis added) and 18 (listing cases).

Mr. Rothschild is the Director of Litigation at the Western Center on Law and Poverty and a recognized fee expert in the State of California. Rothschild Decl. at ¶¶ 2-6. Mr. Rothschild is familiar with the work of Ms. Uzeta and opines that her requested rate of $600/hour is "well within the range of hourly rates attorneys with comparable experience charge their fee-paying clients in Los Angeles and may even fall on the low end of that range." Rothschild Decl. at ¶ 8.

The 2016 Declaration of Richard Pearl provides an extensive survey of rates in the Central District, including rates found reasonable by the Courts. Mr. Pearl is a pre-eminent expert on the topic of attorneys' fees in California, and, as the author of the standard treatises on that topic, quite literally "wrote the book." Pearl Dec. ¶3. More than 90% of his practice is devoted to issues involving court-awarded attorneys' fees, and his declarations on those issues have been cited favorably by numerous federal and state courts, including several Ninth Circuit decisions. *Id.* at ¶¶ 4, 6 (listing court decisions). Mr. Pearl opined in his declaration that Plaintiffs' attorneys - *including Ms. Uzeta at her requested rate of $750/hour* - were "well within the range of non-contingent market rates charged for reasonably similar services by Los Angeles Area attorneys of reasonably similar qualifications and experience." Pearl Decl. at ¶¶ 9-10, 12. Mr. Pearl provided substantial data in support of this opinion, including hourly rates found reasonable by various local courts for reasonably comparable services, including, but not limited to the 2015 Order granting attorneys' fees in Willits et al v. City of Los Angeles, No. CV 10-5782 CCBM (RZx)(C.D. Cal.), where an attorney with a law school

graduation date of 1993 was found to warrant a $750/hour fee rate. Pearl Decl. at ¶¶ 13-15.

The 2013 Declaration of Barrett S. Litt also provided an extensive survey of rates in the region. Litt Decl. at ¶¶ 29-30. Mr. Litt is a well-known Southern California attorney who has extensive experience in fee shifting cases, has testified about or submitted declarations regarding rates in numerous cases, and maintains a significant database of rates and fee awards in California. *See generally* Litt Decl. Mr. Litt is personally familiar with Ms. Uzeta, her work and her reputation for handling civil rights cases on behalf of persons with disabilities. Litt Decl. at ¶ 15. Mr. Litt confirms that Ms. Uzeta is considered among the leading disability rights practitioners in California. Id. As Mr. Litt explained, the $700 hourly rate requested for Ms. Uzeta in 2013 was "well within the rates charged by attorneys of comparable experience in the Los Angeles market for public interest work" and "well within the range of reasonable rates for attorneys of comparable skill and experience." Litt Decl. at ¶¶ 28, 29(b).

The 2013 Declaration of Carol A. Sobel also supports Ms. Uzeta's requested rate. Ms. Sobel is an accomplished civil rights attorney in Southern California with considerable experience and expertise in the area of attorneys' fees for civil rights and public interest litigation. *See generally* Sobel Decl. Ms. Sobel opined that the $700/hour rate sought by Ms. Uzeta in 2013 was "within the range of reasonable market rates in the Central District." Sobel Decl. at ¶¶ 20-27 (citing comparable fee awards).[1]

Ms. Uzeta's history of fee awards in the $500/hour to $700/hour range, and the above-cited declarations and the fee orders and data cited therein

---

[1] The exhibits described and referenced by Ms. Sobel in her declaration are not included with the current filing, as they are quite voluminous, but can be provided to the Court upon request.

provide "satisfactory evidence" that the rate requested for Ms. Uzeta is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. at 895-96 n.11.  Thus, her requested rate should be granted.

### b) *Attorneys Raymond G. Ballister, Dennis J. Price, Elliott Montgomery and Isabel Masanque.*

Plaintiff seeks a rate of $550/hour for attorney Raymond G. Ballister, an attorney with 35 five years of litigation experience, ten years of which have been focused on disability rights. Potter Decl. at ¶ 5. Mr. Ballister has taken and defended hundreds of depositions, attended thousands of hearings, and has an extensive trial record.  Id.  In light of his experience with conducting trials, particularly in front of presiding Judge Stephen V. Wilson, Mr. Ballister was assigned as lead trial counsel for this matter. Uzeta Decl. at ¶ 13.  Mr. Ballister also defended Plaintiff's deposition and made appearances on Plaintiff's behalf.  Id.  Mr. Ballister spent a total of 36.7 hours on his assigned tasks in this matter.  Exhibit A, pp. 37-39.

Plaintiff seeks a rate of $450/hour for the limited tasks completed by attorneys Dennis Price, Elliott Montgomery and Isabel Masanque in this litigation.  The qualifications of all three attorneys are set forth in the concurrently filed declaration of Mark Potter.  Potter Decl. at ¶¶ 6-8.

Mr. Price is a 2011 graduate of Loyola Law School, and a supervising attorney at the Center for Disability Access. Potter Decl. at ¶ 6.  Compensation is sought for Mr. Price's limited role in arguing the successful appeal of the dismissal of Plaintiff's complaint in March 2019 (*see* Sarfaty v. City of Los Angeles (9th Cir. 2019) 765 Fed.Appx 280) and handing the argument in opposition to the City's second motion to dismiss. Uzeta Decl. at ¶ 14. Mr. Price spent a total of 10.2 hours on his assigned tasks in this matter.  Exhibit A, pp. 40-42.

Mr. Montgomery is a 2011 graduate of California Western School of Law. Potter Decl. at ¶ 7. Compensation is sought for Mr. Montgomery's limited role in defending the deposition of Plaintiff's expert Paul Bishop in 2020. Uzeta Decl. at ¶ 15.  Mr. Montgomery spent a total of 4.2 hours on his assigned tasks in this matter.  Exhibit A, p. 43.

Ms. Masanque graduated cum laude from California Western School of Law in 2012. Potter Decl. at ¶ 8. Compensation is sought for Ms. Masanque's limited role in conducting conferences of counsel with the City's counsel on their first motion to dismiss in 2017, and on the parties' cross motions for summary judgment in 2019. Uzeta Decl. at ¶ 16. Ms. Masanque spent a total of 1.5 hours on her assigned tasks in this matter.  Exhibit A, p. 44.

The rates sought by Ms. Masanque and Messrs. Ballister, Price and Montgomery have been awarded by numerous courts within this district. Potter Decl. at ¶ 9 (listing cases). The requested rates are also supported by commissioned fee expert John O'Connor.  Potter Decl. at ¶ 10  and Exhibit J. Mr. O'Connor analyzed fees rates sought by attorneys at the Center for Disability Access and found the range of rates requested herein to be reasonable both with reference to other matters in the Central District and with reference to other tools available to him. Id.

### C. Plaintiff Is Entitled to a Multiplier

Plaintiff prevailed on both his federal and state law claims and is entitled to an upward multiplier under both federal and state law. Under federal law, adjustments to the presumptively reasonable lodestar amount may be made based upon the factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir.1975). The Kerr factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary

fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See* Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir.2006).

Where, as here, a federal court has pendant jurisdiction over a state law claim, state substantive law governs whether a plaintiff is entitled to an award of attorneys' fees, including whether a multiplier is applicable. Crommie v. State of California, Public Utilities Commission, 840 F.Supp. 719, 725-26 (N.D. Cal. 1994), *aff'd,* Mangold v. California Public Utilities Commission, 67 F.3d 1470, 1478-79 (9th Cir.1995).

Under state law, counsel's lodestar may be adjusted upward by the court based on factors including (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. Serrano v. Priest, 20 Cal.3d 25, 49 (1977). The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

The purpose of the contingent risk multiplier is two-fold: first, "to determine a fee that is likely to entice competent counsel to undertake difficult public interest cases" and "cases of significant societal importance," and, second, to provide compensation in the same manner that the market provides compensation for contingency cases, i.e., by increasing the fee to compensate for the risks assumed. Crommie, 840 F.Supp. at 725.

A separate and independent basis for awarding plaintiff a multiplier arises from what the courts call the "quality" factor. An upward "multiplier" is justified based on the novelty and complexity of the litigation and the skill displayed in presenting the case. <u>Ketchum v. Moses</u> (2001) 24 Cal.4th 1122, 1132; *see also* <u>Wing v. Asarco, Inc</u>. 114 F.3d 986, 988-990 (9th Cir. 1997) (upholding multiplier of 2.0 based in part on quality of representation and the excellent result obtained); <u>Vizcaino v. Microsoft Corp</u>. 290 F.3d 1043, 1051 (9th Cir. 1997) (upholding multiplier of 3.65 based on complexity and length of case). Another factor that justifies an upward enhancement is the extent to which the case precluded counsel from accepting other employment.

Here, a multiplier is warranted on all grounds. If any category of cases warrants a contingent risk multiplier, disability discrimination cases do because of the inherent difficulties in successfully handling those types of cases. The California Court of Appeals found "the public interest in the prosecution of meritorious civil rights cases requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause." <u>Horsford v. Board of Trustees of California State University</u> 132 Cal.App.4th at 399.

The declarations filed herewith likewise establish the "undesirability" of this category of cases, and the fact that the contingent nature of the fee supports an upward adjustment of the fee award. *See* Fisher Decl. at ¶ 21 ("Due to the complexity of this matter, involving the City of Los Angeles's 'Great Streets' program and the related accessibility issues, few law firms practicing in the area of disability rights would have the resources and expertise to take such a case on"); Pearl Decl. at ¶ 22 ("The expense and risk of public interest litigation has not diminished over the years; to the contrary, these cases are in many ways more difficult than ever. As a result, fewer and fewer attorneys and firms are willing to take on such litigation, and the few

who are willing to do so can only continue if their fee awards reflect true market value."); Litt Decl. at ¶ 32 ("Because of my decades of experience and specialization in public interest and civil rights litigation, I am especially familiar with the availability of attorneys in the Southern California area to do such work. Very few lawyers are available or willing to undertake such matters.... Thus, it is particularly important that in a case such as this, where Plaintiffs litigated the case to a successful result, counsel recover their fees for time spent."); Fischer Decl. at ¶¶ 19 ("Having practiced civil and disability rights litigation for a number of years, I have learned that the award of attorney's fees to successful plaintiffs is essential to the enforcement of civil rights laws. Given the demanding evidentiary hurdles and discovery challenges, disability and civil rights cases involve significant risks and costs. It is therefore critical that plaintiffs are able to obtain attorney's fees at prevailing market rates in order to compensate for the contingent nature of these cases"); and Rothschild Decl. at ¶ 7 ("Recovery of statutory attorneys' fees, litigation expenses and costs is essential to allow practitioners such as [Plaintiff's counsel] to maintain a public-interest oriented and disability-specific practice, representing clients who otherwise experience significant barriers obtaining representation and equal access to the justice system.")

Additionally, there is no question this case addressed a number of significant legal issues, including the applicability of the program access requirements of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and California Government Code Section 11135 to on-street parking alterations. This litigation also addressed the applicability and relevance of a number of technical accessibility standards to on-street parking, including the 2010 Americans with Disabilities Act Standards for Accessible Design and the Proposed Right-of-Way Guidelines published by the U.S. Access Board. The Final Judgment provides meaningful guidance on

how to analyze the accessibility of a facility for which there are no exacting technical standards and confirmed that the Title III obligations of private businesses should not factor into the analysis of whether a public entity is complying with its obligations under the program accessibility provisions of Title II. Plaintiff prevailed on all of these issues, testifying to the skilled nature of counsels' work in this case and further warranting an upward adjustment.

### D. Plaintiff is Entitled to Litigation Expenses and Costs

Plaintiff is entitled to costs on this matter, including expert fees. Lovell v. Chandler, 303 F.3d at 1058; Hamed v. Macy's West Stores, Inc., 2011 WL 5183856 at *12 (N.D. Cal. 2011); 28 C.F.R. Pt. 35, App. A, Section–by–Section Analysis, § 35.175 ("litigation expenses include items such as such as expert witness fees, travel expenses, etc."). Costs in this matter total $27,173.99, and are comprised of typical litigation costs, such as filing fees, deposition costs, expert fees, and costs related to trial. Potter Decl. at ¶ 3 and Exhibit B.

Counsel have submitted an itemized list of billable costs incurred as Exhibit B to the Declaration of Mark Potter. Counsel have also submitted a separate Application to the Clerk to Tax Costs in the amount of $2,818.61. Uzeta Decl. at ¶ 26; Exhibit C. To the extent that any of the costs listed in Plaintiff's Application to Tax Costs are not allowed pursuant to Fed. R. Civ. P. 54(d) and Local Rule 54, Plaintiff seeks a ruling from this Court that he is entitled to those costs as part of his general litigation expenses.

### E. Plaintiff Is Entitled to Fees for Work Litigating his Reasonable Fees and Costs

Plaintiff is entitled to compensation for time spent obtaining his fees and costs. *See* Bernardi v. Yeutter, 951 F.2d 971, 975-76 (9th Cir. 1991) (holding that denial of fees-on-fees issue is reversible error); *see also* Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986); Ketchum v. Moses,

24 Cal.4th at 1133. Plaintiff will submit a supplemental declaration with his Rely Brief in support of this Motion, setting forth the time spent on the Motion and Reply for which he seeks additional attorneys' fees.  Such time is not included with the billing records submitted concurrently with this Motion.

## III.    CONCLUSION

Plaintiff respectfully requests that this Court grant Plaintiff's motion for an award of reasonable attorney fees and costs.

Date:  September 25, 2020          Respectfully Submitted,

By:    /s/ Michelle Uzeta
                Michelle Uzeta
                Attorneys for Plaintiff